**EXHIBIT 1**
**TITLE COMMITMENT**

ALTA Commitment (6-17-06)

# ALTA Commitment Form

## COMMITMENT FOR TITLE INSURANCE

### Issued by

### *First American Title Insurance Company*

First American Title Insurance Company, a California corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 180 days after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

IN WITNESS WHEREOF, First American Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

*First American Title Insurance Company*

BY _____ PRESIDENT

ATTEST _____ SECRETARY

**INSURANCE FRAUD WARNING** by First American Title Insurance Company:  *Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.*

## CONDITIONS

1.  The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and Stipulations and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.  The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. You may review a copy of the arbitration rules at http://www.alta.org/.

# COMMITMENT FOR TITLE INSURANCE FORM

## SCHEDULE A

Revision Info: Revision No. 2

Name and Address of Title Insurance Company:
First American Title Insurance Company
24 Greenway Plaza, Suite 850
Houston, TX 77046

1.  Effective Date: March 9, 2010 at 7:30 a.m.

2.  Policy or Policies to be issued:                          Amount

    a.  ALTA Owners Policy (06-17-06)                         $To be determined

        Proposed Insured:
        To Be Determined

    b.  ALTA Loan Policy (06-17-06)                           $None

        Proposed Insured:
        None

3.  The estate or interest in the Land described or referred to in this Commitment is:

    Leasehold

4.  Title to the Leasehold estate or interest in the Land is at the Effective Date vested in:

    David A. Meyers, Trustee, and Amanda L. Meyers, Trustee of the Visicon Shareholders Trust, an
    Ohio trust, U/A/D November 11, 2002 by Lease from the Secretary of the Air Force to H.A.I.,
    Incorporated and Vantage Group, Inc., dated December 29, 1988, and recorded on March 15,
    1989, in Volume 435, Page 366; AS ASSIGNED pursuant to the Assignment and Assumption of
    Ground Lease between H.A.I., Inc., and Ohio corporation, and Vantage Group, Inc. (nka Valley
    Group, Inc.), an Ohio corporation, collectively as Assignors, and Visicon, Inc., an Ohio
    corporation, as Assignee, dated September 30, 1991, and recorded October 17, 1991 in Volume
    566, Page 350; AS ASSIGNED to David A. Meyers and Amanda L. Meyers, as Trustees of the
    Visicon Shareholders Trust, an Ohio trust, U/A/D November 11, 2002 by Assignment and
    Assumption of Ground Lease, dated November 11, 2002and recorded on November 26, 2002 in
    OR Volume 1858, Page 891 of Greene County Records.

    Fee Simple is vested in the United States of America, by deed recorded in Volume 133, Page 12
    of Greene County Records.

5.  The Land referred to in this Commitment is described as follows:

Situated in the Township of Bath, County of Greene, State of Ohio, described as follows:

SITUATE IN THE STATE OF OHIO, COUNTY OF GREECE, TOWNSHIP OF BATH AND BEING PART OF SECTION 31, TOWN 3, RANGE 8 M.R.S., ALSO BEING PART OF THE GOVERNMENT RESERVATION OF WRIGHT-PATTERSON AIR FORCE BASE BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A STAKE SET AT A POINT 50.00 FEET EAST OF THE CENTERLINE OF CHIDLAW ROAD AND 46.00 FEET SOUTH OF THE CENTERLINE OF SPRUCE WAY;

THENCE SOUTH 64°22'55" EAST, ALONG THE SOUTH LINE OF SAID SPRUCE WAY, A DISTANCE OF 276.28 FEET TO A STAKE SET A POINT OF CURVATURE;

THENCE ON A CURVE TO THE RIGHT, ALONG THE SOUTH LINE OF SAID SPRUCE WAY, HAVING A RADIUS OF 529.00 FEET, A CENTRAL ANGLE OF 33°30'36", FOR AN ARC DISTANCE OF 309.39 FEET TO A STAKE SET;

THENCE TO STAKE SET BY THE FOLLOWING COURSES;

SOUTH 59°07'41" WEST A DISTANCE OF 139.01 FEET;

SOUTH 23°44'59" EAST A DISTANCE OF 468.88 FEET;

SOUTH 62°49'51" WEST A DISTANCE OF 305.00 FEET;

NORTH 63°42'24" WEST A DISTANCE OF 514.12 FEET TO A STAKE SET 213.89 FEET EAST OF THE CENTERLINE OF CHIDLAW ROAD;

THENCE NORTH 0°50'12" WEST, A DISTANCE OF 63.26 FEET TO A STAKE SET AT A POINT OF CURVATURE;

THENCE ON A CURVE TO THE RIGHT, HAVING A RADIUS OF 1300.00 FEET, A CENTRAL ANGLE OF 26°25'08", FOR AN ARC DISTANCE OF 599.42 FEET TO A STAKE SET AT A DISTANCE OF 50.00 FEET FROM THE CENTERLINE OF CHIDLAW ROAD;

THENCE NORTH 25°34'56" EAST, ALONG THE EAST LINE OF CHIDLAW ROAD, A DISTANCE OF 92.00 FEET TO THE PLACE OF BEGINNING, CONTAINING 10.272 ACRES.

TOGETHER WITH RIGHTS OF INGRESS AND EGRESS AND THE RIGHT, IN COMMON WITH OTHERS, TO THE USE OF ALL SUPPORTING FACILITIES, ROADWAYS AND/OR RAILROAD TRACKS SERVING THE LEASED PREMISES AS SET FORTH AND DESCRIBED IN THE LEASE FROM THE SECRETARY OF THE AIR FORCE TO H.A.I., INCORPORATED AND VANTAGE GROUP, INC., DATED DECEMBER 29, 1988, AND RECORDED MARCH 15, 1989, IN VOLUME 435, PAGE 366 OF THE GREENE COUNTY, OHIO RECORDS.

**INSURANCE FRAUD WARNING** by First American Title Insurance Company: *Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.*

# COMMITMENT FOR TITLE INSURANCE FORM

## SCHEDULE B

### SECTION ONE

### REQUIREMENTS

The following are the requirements to be complied with:

Instrument(s) creating the estate or interest to be insured must be approved, executed, delivered and filed for record.

1.  Payment of the agreed amounts for the interest in the land and/or the mortgage to be insured.

2.  Payment of the premium, fees and charges required for the issuance of the title policy or policies to be issued.

3.  Receipt of an Owner's Affidavit acceptable to the Company.

4.  Receipt and review of the Survey on the subject premises and the company reserves the right to make additional exceptions and/or requirements if necessary.

5.  Proper completion of the foreclosure action including judgment entry and confirmation of sale.

6.  Proof of service of all necessary parties to the foreclosure action.

7.  In the event the United State of America is a necessary party to the foreclosure action, the final policy will contain an exception for the right (s) of redemption in favor of the United States of America.

8.  In the event the estate to be insured results from an Assignment and Assumption of Ground Lease, the Company will require that any encumbrance previously barred or eliminated by way of the Doctrine of Lis Pendens be satisfied and/or terminated.

9.  The Company may make other requirements or exceptions upon its review of the documents creating the estate or interest to be insured or otherwise ascertain details of the transaction.

**End Schedule B - Section One**

ALTA Commitment (6-17-06)

Commitment Page 6
Commitment Number: NCS-387428-
HOU1

# COMMITMENT FOR TITLE INSURANCE FORM

## SCHEDULE B

### SECTION TWO

### EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the Public Records or attaching subsequent to the Effective Date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or by making inquiry of the persons in possession of the Land.

3.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title, including discrepancies, conflicts in boundary lines, shortage in area, or any other facts that would be disclosed by an accurate and complete land survey of the Land, and that are not shown in the Public Records.

4.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown in the Public Records.

5.  Rights of parties in possession of all or any part of the premises, including, but not limited to, easements, claims of easements or encumbrances that are not shown in the public records.

6.  Taxes or assessments approved, levied or enacted by the State, County, Municipality, Township or similar taxing authority, but not yet certified to the tax duplicate of the County in which the land is situated, including but not limited to any retroactive increases in taxes or assessments resulting from any retroactive increase in the valuation of the land by the State, County, Municipality, Township, or other taxing authority.

7.  Greene County Treasurer's General Tax Duplicate shows:

    Taxes and Assessments for the first half of 2009, listed to Visicon Corp/Hope Hotel, as Permanent Parcel No. A01000100070002308, amounting to $0 are exempt.

    Valuation:  Land 2,935,630 Impr. -0- Total 2,935,630

    Assessments, Homestead Exemption or Delinquency included in the above amount as follows:

    None

ALTA Commitment (6-17-06)                                    Commitment Page 7
                                          Commitment Number: NCS-387428-
                                                                        HOU1

Taxes for the last  half of  2009 are a lien not yet due.
Taxes for the year 2010 are a lien not yet due and payable.

8.   Terms and Conditions of the Lease from the Secretary of the Air Force to H.A.I., Incorporated
     and Vantage Group, Inc., dated December 29, 1988, and recorded on March 15, 1989, in Volume
     435, Page 366; AS ASSIGNED pursuant to the Assignment and Assumption of Ground Lease
     between H.A.I., Inc., and Ohio corporation, and Vantage Group, Inc. (nka Valley Group, Inc.), an
     Ohio corporation, collectively as Assignors, and Visicon, Inc., an Ohio corporation, as Assignee,
     dated September 30, 1991, and recorded October 17, 1991 in Volume 566, Page 350; AS
     ASSIGNED to David A. Meyers and Amanda L. Meyers, as Trustees of the Visicon Shareholders
     Trust, an Ohio trust, U/A/D November 11, 2002 by Assignment and Assumption of Ground Lease,
     dated November 11, 2002 and recorded on November 26, 2002 in OR Volume 1858, Page 891 of
     Greene County Records.

9.   Restrictions as contained in a Deed recorded in Volume 133, Page 12 of Greene County Records.

10.  Easement for Pipeline Right of Way from the Secretary of The Air Force to the City of Fairborn,
     filed for record October 26, 1998 and recorded in OR Volume 1260, Page 105 of Greene County
     Records.

11.  Note: For information only a Memorandum of Trust for The Visicon Shareholders Trust
     Agreement dated November 11, 2002, filed for record November 26, 2002 and recorded in OR
     Volume 1858, Page 923 of Greene County Records.

12.  Open-End Leasehold Mortgage, Assignment of Rents and Security Agreement from David A.
     Meyers and Amanda L. Meyers, as Trustees of Visicon Shareholders Trust, an Ohio trust U/A/D
     November 11, 2002 to Greenwich Capital Financial Products, Inc. in the amount of
     $9,000,000.00, filed for record November 25, 2002 and recorded in OR Volume 1858, page 927
     of Greene County Records.

     and Assigned to LaSalle Bank National Association, as Trustee for the Registered Holders of
     Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial
     Mortgage Pass-Through Certificates, Series 2002-C1, filed for record July 20, 2005 and recorded
     in OR Volume 2445, Page 832 of Greene County Records.

     and Assigned by Bank of America, N.A., a National Banking Association and successor by merger
     to LaSalle Bank National Association, a National Banking Association, as Trustee for the
     Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust
     2002-C1, Commercial Mortgage Pass-Through Certificates, Series 2002-C1 to GCCFC 2002-C1
     Dayton Hotel & Conference Center, LLC by that certain Assignment dated February 17, 2010,
     filed for record February 25, 2010 and recorded in Volume 2994, Page 784 of Greene County
     Records.

13.  Assignment of Leases and Rents from David A. Meyers and Amanda L. Meyers, as Trustees of
     Visicon Shareholders Trust, and Ohio trust U/A/D November 11, 2002 and  filed for record
     November 26, 2002 and recorded in OR Volume 1858, Page 972 of Greene County Records.

     and Assigned to LaSalle Bank National Association, as Trustee for the Registered Holders of
     Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial
     Mortgage Pass-Through Certificates, Series 2002-C1, filed for record July 20, 2005 and recorded
     in OR Volume 2445, Page 832 of Greene County Records.

     and Assigned by Bank of America, N.A., a National Banking Association and successor by merger
     to LaSalle Bank National Association, a National Banking Association, as Trustee for the
     Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust

ALTA Commitment (6-17-06)

Commitment Page 8
Commitment Number: NCS-387428-HOU1

2002-C1, Commercial Mortgage Pass-Through Certificates, Series 2002-C1 to GCCFC 2002-C1 Dayton Hotel & Conference Center, LLC by that certain Assignment dated February 17, 2010, filed for record February 25, 2010 and recorded in Volume 2994, Page 784 of Greene County Records.

14.  UCC Financing Statement 2002-000225, filed for record November 26, 2002 showing Visicon Shareholders Trust, an Ohio trust, U/A/D November 11, 2002 as Debtor and Greenwich Capital financial Products, Inc. as Secured Party.

and Assigned to LaSalle Bank National Association, as Trustee for the Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial Mortgage Pass-Through Certificates, Series 2002-C1, filed for record July 20, 2005 of Greene County Records.

Continuation filed at 2007-000130 filed for record June 18, 2007 of Greene County Records.

15.  UCC Financing Statement 2002-000226, filed for record November 26, 2002 showing Visicon Shareholders Trust, an Ohio trust, U/A/D November 11, 2002 as Debtor and Greenwich Capital financial Products, Inc. as Secured Party.

and Assigned to LaSalle Bank National Association, as Trustee for the Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial Mortgage Pass-Through Certificates, Series 2002-C1, filed for record July 20, 2005 of Greene County Records.

Continuation filed at 2007-000120 filed for record June 18, 2007 of Greene County Records.

16.  Certificate of Judgment 1997 CJ 0637 in favor of Ohio Department of Taxation vs Visison Inc. and Hope Hotel in the amount of $623,934.60 plus interest and court costs, if any.

17.  Notwithstanding the reference to acreage or square footage in the description set forth in Schedule A hereof, this commitment/policy does not insure nor guarantee the acreage or quantity of land set forth therein.

18.  The premises described herein lie within the confines of Wright Patteson Air Force Base and as such do not have access to streets dedicated for the public use; however the Company assures the base exits to and from the insured premises subject to the terms of the Operating Agreement.

19.  In accordance with Section 159.05 Ohio Revised Code, exclusive jusrisdiction over the premises ceded to The United Sates for all purposes except the service upon such sites of all civil and criminal process.

ALTA Commitment (6-17-06)                          Commitment Page 9
                                          Commitment Number: NCS-387428-
                                                              HOU1

## FORECLOSURE COMMITMENT ENDORSEMENT

### Attached to Title Insurance Commitment No. NCS-387428-HOU1

Issued by

## *First American Title Insurance Company*

The Policy Amount to be issued, referred to in Item 2 of Schedule A, shall be $7,411,843.02, or the amount of the successful bid at judicial sale, whichever is greater.

As required under Ohio Revised Code Section 2329.191(C), the street address of the real estate is Building #823, Area A, Wright Patterson Air Force Base, OH 45433-5000 as contained in the records of the Greene County Auditor's Office, which information is deemed accurate but is not guaranteed.

As required under Ohio Revised Code Section 2329.191(C), the name and address of each lienholder and the name and address of each lienholder's attorney, if any, as shown on the recorded lien is:

As to Items, 12 and 13 the name and address of the lienholder is GCCFC 2002-C1 Dayton Hotel & Conference Center, LLC, c/o LNR Partners, Inc., 1601 Washington Avenue, Suite 700, Miami Beach, FL 33139. There is no attorney information of record.

As to Items 14 and 15 the name and address of the lienholder is LaSalle National Bank, as Trustee for the Registered Holders of Greenwich Capital Commerical Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial Mortgage Pass -Through Certificates, Series 2002-C1, having an office at 135 South LaSalle Street, Suite 1625, Chicago, Illinois 60603. There is no attorney information of record.

As to Item 16 the name of the lienholder is State of Ohio, Department of Taxation. There is no address of record. There is no attorney information of record.

Notwithstanding any provision to the contrary, all liability and obligation under the Commitment shall cease and terminate thirty (30) days after the recordation of the deed by the officer who makes the sale to the successful bidder at judicial sale, pursuant to Ohio Revised Code Section 2329.191(C).

This endorsement is issued as part of the Commitment. Except as it expressly states, it does not (i) modify any of the terms and provisions of the Commitment, (ii) modify any prior endorsements, (iii) extend the Date of Commitment, or (iv) increase the Amount of Insurance. To the extent a provision of the Commitment or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the Commitment and of any prior endorsements.

### End Schedule B - Section Two

ALTA Commitment (6-17-06)
Commitment Page 10
Commitment Number: NCS-387428-
HOU1



## PRIVACY POLICY

**We Are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

**Types of Information**

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;

- Information about your transactions with us, our affiliated companies, or others; and

- Information we receive from a consumer reporting agency.

**Use of Information**

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

© 2001 The First American Corporation • All Rights Reserved